## Case No. 9,429.

MENZELL v. CHICAGO & N. W. RY. CO.

[1 Dill. 531;[1] 4 Am. Law T. Rep. U. S. Cts. 58; 5 West Jur. 61.]

Circuit Court, D. Iowa. Oct., 1870.

CARRIERS — LIMITATION OF LIABILITY — SPECIAL CONTRACT—LOSS BY FIRE.

1. A contract between a railway company and the shipper of goods, limiting the common law liability of the company as a carrier, will have no greater operation given to it than the language used plainly shows the parties must have intended that it should have.

2. A special contract of this character construed; and *held* not to exempt the company for a total loss of the goods by fire, while in the warehouse of the company, at an intermediate station, on the line of transportation.

The plaintiff brought this action to recover of the defendant, the Chicago & Northwestern Railway Company, the value of certain goods which he alleges that on or about the 7th day of September, 1868, he delivered to it in Oshkosh, in Wisconsin, to be transported to Marshalltown, in Iowa. The defendant is alleged, in the petition, to be a common carrier, operating its road between these two places. The answer admits that the defendant is a common carrier, and that it was operating a line of railroad between Oshkosh and Marshalltown, but it does not admit the receipt of the goods or the value thereof, as claimed by the plaintiff. The answer also admits "that on or about September 7, 1868, at Oshkosh station, Wisconsin, the plaintiff delivered to the defendant a lot of household goods and furniture to be transported to Marshalltown, in Iowa, on the defendant's railway." And it sets up a special contract, dated September 7th, 1868, signed by the plaintiff, by which, "in consideration of the company transporting the property to Chicago station," the plaintiff "does hereby release the said company, and each and every other company, over whose lines said goods may pass to destination, from any and all damages that may occur to said goods, arising from leakage or decay, chafing or breakage, or from any other cause not the result of collision of trains, or of cars being thrown from the track while in transit." The contract gives the company the right to send the goods on arrival at their destination (Marshalltown) to a warehouse, after the lapse of a certain time, without payment of charges. After setting out this release or contract the answer alleges that in course of transportation at Chicago it was necessary to put the goods in the de-

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

fendant's warehouse or freight depot at that place, and that while there the said building accidentally took fire and the goods of the plaintiff were destroyed, without any fault or neglect on the part of the defendant. No written reply is filed, because the statute of the state (adopted as the practice of this court) dispenses with a reply, and provides that "new matter in the answer shall (without any written pleading) be deemed controverted by the adverse party as upon a direct denial, or avoidance." Revision 1860, Iowa, § 2917. Under this statute the plaintiff on the trial claimed to avoid the effect of the written release or special contract set up in the answer, by insisting that it was procured by fraud or deception, he being a German and not able to read English, and not knowing or having had explained to him the nature of the instrument, and being ignorant thereof. The plaintiff also claimed that if the goods were consumed by fire, that the fire was owing to the fault or negligence of the company, in storing them in an exposed warehouse containing inflammable articles, without being duly guarded or watched. The plaintiff also insisted that this special contract is not binding upon him because there was no consideration therefor. He also maintained that as a matter of law the instrument does not undertake to exempt the company for loss by fire while the goods were in the warehouse at Chicago, an intermediate station on the line of transportation.

Certain facts admitted on the trial, or not controverted, may be here noticed. It is not denied that on the afternoon or evening of Monday, September 7, 1868, at Oshkosh, the plaintiff delivered to the defendant's agent certain boxes and packages for transportation, and that the company received them and agreed to transport them for the plaintiff to Marshalltown, Iowa. The goods arrived at Chicago on Friday, September 11th, in the afternoon, the distance being 193 miles. Chicago is the end of the Wisconsin division of the defendant's road; and the evidence shows as to goods not in bulk (like the present), that the usual course of business of the company is to reship them at Chicago, putting them into and passing them through their warehouse. The goods of the plaintiff were put by the defendants into their warehouse or freight depot, on Saturday, the 12th of September. On the afternoon of the succeeding day (Sunday) the warehouse containing the goods took fire and the goods were consumed thereby.

The trial was to a jury before DILLON, circuit judge. Both parties produced evidence in relation to the controverted questions of fact. The jury found a general verdict for the plaintiff for the value of the goods, and returned the following answers to certain questions of fact submitted to them in pursuance of the practice in the state courts of Iowa, adopted as the practice of this court; viz.:

[Question 1. Can the plaintiff read English,

and did he understand the nature of the special contract of Sept. 7th, 1868, set up in the answer, when he signed it? Answer. No. Q. 2. Was said contract read to him, or its nature explained to him? A. No. Q. 3. Did the plaintiff sign it in ignorance of its nature? A. Yes. Q. 4. Was the plaintiff guilty of negligence or fault, in not knowing (if such is the fact) the nature of the contract? A. No; under the circumstances. Q. 5. Did the agent who furnished the blank and required the plaintiff to sign it purposely conceal from the plaintiff the nature of the paper? A. No. Q. 6. Did the agent believe that the plaintiff did understand the paper he signed? A. No. Q. 7. If the plaintiff did not understand the contract, whose fault was it, his or the agent? or was it an accident and not the fault of either? A. The agent's, under the circumstances. Q. 7½. Did the agent know, or have cause to believe that the plaintiff could not read English? A. He had cause to believe he could not. Q. 8. Did the defendants' agent make any representation to the plaintiff as to the nature of the paper they wished him to sign? A. No. Q. 9. What did plaintiff believe the paper was when he signed it? A. A paper; the contents of which he had no definite idea, but which he understood to refer to his goods. Q. 10. Did he make inquiries concerning its character or contents? A. No. Q. 11. Did the fire in defendant's warehouse happen without any fault or neglect of the company or its agents? A. No. Q. 12. In respect to storing the goods in the warehouse and in caring for them while there, did the company pursue such a course and take such care of them as an ordinarily prudent man would have done, if the whole risk of loss had, under the circumstances, been his own? A. No.] [2]

The defendant moved for a new trial on the ground that the special findings, as well as the general verdict, were against the weight of evidence, and for other reasons.

Withrow & Wright and H. C. Henderson, for the motion.

H. E. J. Boardman, opposed.

DILLON, Circuit Judge. The motion for a new trial must be overruled. In the view I take of the case it is not necessary to consider whether the plaintiff succeeded by the fair weight of the testimony in establishing that the special contract was obtained from him by fraud. Nor is it necessary to consider whether the alleged want of any specific consideration therefor renders it inoperative, nor whether the special finding that the fire happened through the fault of the company, is so manifestly unsupported by evidence as to make it the duty of the court to set it aside.

On the admitted facts of the case, conceding the validity of the special contract on which the defendant rests, and that it is

binding upon the plaintiff, and that the fire was purely accidental, it is still my opinion, as it was on the trial, that the plaintiff is entitled to recover.

By the common law a public carrier is liable to the owner of the goods, though they are without fault, on the part of the carrier, destroyed by fire while in the course of transportation. The contract between the plaintiff and the defendant is admitted in the answer to be to carry the goods from Oshkosh to Marshalltown; and the goods were burned at Chicago, an intermediate station, and while the defendant sustained towards the plaintiff the relation of a common carrier. Hence, the defendant is prima facie liable to the plaintiff for the value of his goods destroyed by the fire, but to avoid such liability the company sets up and relies upon the abovementioned special contract, signed by the plaintiff.

The strict responsibility to which the common law holds public carriers is, in my judgment, founded upon a sound and enlightened public policy, and is salutary in its operation; and although it is admitted that it is competent for the shipper and the company, in the absence of prohibitory legislation, to make a special contract, limiting, to a reasonable extent, the common law liability of the latter, yet the courts construe these contracts somewhat strictly; at all events, give to them no greater operation than the words used plainly show that the parties must have intended they should have. Therefore, if the plaintiff, for a consideration, had knowingly entered into a contract with the company, specifically releasing it from all liability for loss of the goods by accidental fire, without fault on its part, while in transit, such a contract, it is conceded, would be binding upon the plaintiff. But did the plaintiff in this case make any such contract? This involves a construction of the special contract set up by the company. The language is, "I hereby release said company from any and all damage that may occur to said goods, arising from leakage or decay, chafing or breakage, or (and this is the language relied on) from any other cause not the result of collision of trains, or of cars being thrown from the track while in transit."

Construing this general and indefinite language conformably to the rules adopted by courts in the interpretation of contracts of this kind, it is my opinion that it does not plainly or satisfactorily appear therefrom that the parties intended thereby to exempt the company from liability for a total loss or destruction of the goods by fire while in the warehouse of the company at an intermediate station on the line of transportation; and therefore this agreement (admitting that it was knowingly entered into by the plaintiff, and founded upon a sufficient consideration) does not relieve the company from liability for the loss of the goods by fire, even though the fire were accidental, and without fault

on the part of the company, its agents, or servants.

Judgment on the verdict.